IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RITA HOUSTON as natural mother of William Scott IV and Trevor Shemar Scott, next of kin of William Scott III, deceased, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   No. 2:21-cv-02684-SHM-tmp<br>) |
| PEOPLE READY, INC. and CATAMOUNT CONSTRUCTORS, INC., | )<br>)<br>) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANT CATAMOUNT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

This is a wrongful death case. Plaintiff Rita Houston ("Houston") asserts tort claims against Defendant People Ready, Inc. ("People Ready") and Defendant Catamount Constructors, Inc. ("Catamount"). (ECF No. 1-1 at ¶¶ 24-47.) Catamount filed a Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") on December 31, 2021. (ECF No. 13.) Houston filed a Response on February 23, 2022. (ECF No. 16.) Catamount filed a Reply on March 9, 2022. (ECF No. 17.) For the following reasons, the Motion to Dismiss is **GRANTED**.

**I.   Background**

William Scott III ("Scott") was an employee of Quality Commercial Cleaning ("QCC"). (ECF No. 1-1 at ¶ 12.) QCC provides clean-up services to construction sites. (ECF No. 1-1 at ¶ 12.) Catamount contracted with QCC to furnish laborers on Catamount's Harbor Chase of Cordova construction project. (ECF No. 1-1 at ¶ 13.) Scott worked at the Harbor Chase jobsite in September 2020. Marcus Williams ("Williams") was an employee of People Ready and also worked at the Harbor Chase jobsite in September 2020. (ECF No. 1-1 at ¶ 14.) On September 18, 2020, Scott was sitting in a jobsite break area with co-workers. (ECF No. 1-1 at ¶ 16.) At around 9:00 a.m., Williams entered the break area with a handgun in his right hand. (ECF No. 1-1 at ¶ 17.) Scott asked Williams to leave the jobsite as weapons were not permitted onsite. (ECF No. 1-1 at ¶ 18.) Williams refused to leave or put away the handgun and verbally accosted Scott. (ECF No. 1-1 at ¶ 19.) The altercation continued until Williams shot and killed Scott. (ECF No. 1-1 at ¶¶ 20, 21.)

Houston is the natural mother of William Scott IV and Trevor Shemar Scott, Scott's next of kin and minor children. (ECF No. 1-1, PageID 4.) She filed her Complaint in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. (ECF No. 1-1, PageID 4.) Houston seeks $2,500,000 in compensatory damages and $5,000,000 in punitive damages. (ECF No. 1, PageID 12.)

Catamount removed the action to this Court pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446. (ECF No. 1, PageID 1.)

**II. Jurisdiction and Choice of Law**

A federal district court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). The Court has original diversity jurisdiction over this case. Houston is a citizen of Tennessee. (ECF No. 1-1 at ¶¶ 1-4). People Ready is a citizen of New Jersey. (ECF No. 1-1 at ¶ 5) Catamount is a citizen of Colorado. (ECF No. 1-1 at ¶ 6.) There is complete diversity. See 28 U.S.C. § 1332(a)(1). Houston's claims exceed $75,000. (ECF No. 1-1, PageID 12.) The amount in controversy is satisfied. See 28 U.S.C. § 1332(a)(1).

A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 65 (2013); Standard Fire Ins. Co. v. Ford Motor Co., 723 F.3d 690, 692 (6th Cir. 2013). The parties do not dispute that Tennessee law applies in this case. When considering issues of state law, federal courts "must follow the decisions of the state's highest court when that court has addressed the relevant issue." Talley v. State Farm Fire & Cas. Co., 223 F.3d 323, 326 (6th Cir. 2000). If the forum state's highest court has not addressed the

issue, federal courts must "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." In re Dow Corning Corp., 419 F.3d 543, 549 (6th Cir. 2005).

**III. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss for failure to state a claim, a court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in her favor. Golf Vill. N., LLC v. City of Powell, 14 F.4th 611, 617 (6th Cir. 2021) (citing Cahoo v. SAS Analytics, Inc., 912 F.3d 887, 897 (6th Cir. 2019)).

If a court decides, in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Ass'n Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if

4

"the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." Pfeil v. State St. Bank & Tr. Co., 671 F.3d 585, 599 (6th Cir. 2012), abrogated on other grounds Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409 (2014). However, "if the plaintiff['s] complaint contains facts which satisfy the elements of the defendant's affirmative defense, the district court may apply the affirmative defense." Estate of Barney v. PNC Bank, Nat'l Ass'n, 714 F.3d 920, 926 (6th Cir.2013); accord Marsh v. Genentech, Inc., 693 F.3d 546, 554–55 (6th Cir.2012) ("A motion to dismiss can be premised on an affirmative defense . . . if the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." (internal quotation marks omitted)).

**IV. Analysis**

In its Motion to Dismiss, Catamount argues that Scott's death "arose out of" and "occurred during the course and scope of" his employment. It says that Tennessee law precludes Houston's tort claims against Catamount because Scott's estate can recover through the state workers' compensation system. Houston argues

5

that Scott's death arose out of an "inherently private dispute" with Williams. She says that her tort claims against Catamount are not precluded because Scott's death is not covered by workers' compensation.

The Tennessee Workers' Compensation Act (the "Act"), Tenn. Code Ann. §§ 50-6-101, et seq., provides the exclusive remedies for workers sustaining work-related injuries. Tenn. Code Ann. § 50-6-108(a). An employee's right to recover under the Act requires a finding that the injury arose "out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(15). The phrases "arising out of" and "in the course and scope of" employment are separate requirements. Woods v. Harry B. Woods Plumbing Co., 967 S.W.2d 768, 771 (Tenn. 1998). The phrase "in the course and scope of" refers to the time, place, and circumstances under which the injury occurred. See id. (citing McAdams v. Canale, 294 S.W.2d 696, 699 (Tenn. 1956)). The phrase "arising out of" refers to the injury's origin. Id. An employer may invoke Tenn. Code Ann. § 50-6-108(a), also known as "workers' compensation immunity," as an affirmative defense. See Tenn. R. Civ. P. 8.03. (listing "workers' compensation immunity" as an affirmative defense); Doe v. P.F. Chang's China Bistro Inc., No. W2016-01817-COA-R9-CV, 2017 WL 3741345, at *4 (Tenn. Ct. App. Aug. 29, 2017) ("[Employer] would bear the burden of proof at trial to show by a preponderance of

6

the evidence that the injury fell within the scope of the workers' compensation law.")

The parties here dispute whether Scott's death arose out of his employment.[1] An injury arises out of employment when there is a causal relationship between the employment and the injury. Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991). Addressing whether an assault arises out of employment, the Tennessee Supreme Court has classified assaults into three general categories:

> (1) assaults with an "inherent connection" to employment such as disputes over performance, pay or termination; (2) assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and (3) assaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.

Woods, 967 S.W.2d at 771. The first category of assaults—those that have an "inherent connection" to employment—arise out of employment. Id. The second category of assaults—those that involve "inherently private" disputes—do not arise out of employment. Id. The third and final category of assaults—those that involve random

---

[1] Houston concedes that Scott's death occurred in the course and scope of his employment, but not that his death arose out of his employment. (See ECF No. 16, PageID 44.) Houston does not contest that workers' compensation immunity may apply to Catamount as Scott's co-employer. See Tenn. Code Ann. § 50-6-113 (providing that principal contractors, intermediate contractors, and subcontractors are covered by state workers' compensation statutes "to the same extent as the immediate employer.").

7

violent acts—may arise out of employment depending on the facts. Id. at 772.

Although the Tennessee Supreme Court has not directly addressed the issue, its prior decisions demonstrate that assaults resulting from the enforcement of work policies have an inherent connection to employment and therefore arise out of employment. See Hurst v. Lab. Ready, 197 S.W.3d 756 (Tenn. 2006); Woods, 967 S.W.2d 768; Cabe v. Union Carbide Corp., 644 S.W.2d 397 (Tenn. 1983). In Hurst, decedent and several co-workers were standing outside their employer's office waiting to collect pay. 197 S.W.3d at 758. An unknown woman arrived at the employer's office and asked to use the bathroom. Id. at 758-59. She was refused based on the employer's policy and a sign stating that there was no public restroom. Id. at 759. One of the workers outside the office suggested that the woman could "relieve herself" in the alley. Id. A companion of the woman then confronted the workers and shot the decedent. Id. The trial court found that the assault arose from employment because the decedent had been targeted based on his association with his employer and his employer's "enforcement of its restroom policy." Id. at 760, 762. The Tennessee Supreme Court upheld the trial court's finding that the assault arose from employment. Id. at 762.

The decedent in Woods, a plumber, arrived at a jobsite through a cordoned-off entrance despite a sign posted by a second

8

contractor that the entrance should not be used because use of the entrance would interfere with ongoing floor renovations. 967 S.W.2d at 770. After a confrontation over decedent's use of the entrance, the second contractor shot decedent. Id. at 770-71. The Tennessee Supreme Court found that the dispute "concern[ed] work" and "was apparently related to the employment setting." Id. at 772. Decedent's death had an "inherent connection" to the employment setting and "arose" from his employment. Id. The assault in Woods resulted from the enforcement of work-related preferences. Similarly, assaults that result from the enforcement of an employer's policies have an inherent connection to employment.

In Cabe, the decedent had verbally reprimanded a worker for failing to wear required safety glasses. 644 S.W.2d at 398. Both the decedent and the worker had "raised their voices and an active argument ensued which lasted about five minutes." Id. (internal quotations omitted). Shortly after the argument, decedent suffered a heart attack. Id. The Chancery Court decided that the argument over safety requirements had caused the heart attack, but found that the heart attack did not constitute an "accident" under state workers' compensation law. Id. On appeal, the Tennessee Supreme Court reversed. It held that the decedent's heart attack was covered by workers' compensation and that "[t]here [was] no problem with causation in [the] case." Id. at 399.

Houston's Complaint alleges that Scott "asked Mr. Williams to leave the job site as weapons are not permitted at the site." (ECF No. 1-1 at ¶ 18.) Scott's request to Williams was an attempt to enforce his employer's policies. It is clear that Scott's enforcement of his employer's policies precipitated the dispute with Williams and caused Scott's death. Because Scott's death resulted from the enforcement of employment policies, it has a connection to employment and arose from employment.

The cases Houston cites to support her argument that Scott's death arose from an inherently private dispute are inapposite. (See ECF No. 16, PageID 46.) Doe v. Matthew 25, Inc., asserted a civil claim for assault and battery based on a supervisor's sexual assault on the plaintiff. 322 F. Supp. 3d 843, 849 (M.D. Tenn. 2018). The district court applied the general rule that "emotional injuries arising out of supervisor sexual harassment are not covered by workers' compensation law." Id. at 852. Houston's claims do not arise from sexual harassment or assault.

In Wait v. Travelers Indem. Co., a neighbor assaulted plaintiff inside her home office without provocation. 240 S.W.3d 220, 223-24 (Tenn. 2007). The Tennessee Supreme Court concluded that the assault had no connection to the employment setting and was a non-compensable neutral assault. Id. at 227. Houston's Complaint makes clear that Scott's enforcement of employment

10

policies provoked Williams' assault. Scott's death had an inherent connection to employment and arose from employment.

Brimhall v. Home Ins. Co. addressed an assault that resulted from a co-worker's use of plaintiff's hand cleaner. 694 S.W.2d 931, 932 (Tenn. 1985). The Tennessee Supreme Court concluded that the dispute was personal and did not arise from employment. Id. at 933. The Court explained:

> [Brimhall] provided his own personal hand cleaner because he preferred this particular brand since it did not chap his hands. Although the employer required its [employees] to wash their hands between jobs, it cannot be said that the altercation that resulted in plaintiff's injuries 'arose out of' his employment, but rather, the encounter was a personal matter between Brimhall and [a co-worker] that developed over Brimhall's attempt to make [the co-worker] pay for taking Brimhall's property. If Brimhall had not preferred to have his own personal soap on the job, the incident would not have occurred.

Id. Although there was an employer handwashing policy in place, the dispute in Brimhall was not caused by the enforcement of the policy or even enforcement of an employee's work-related preferences. Instead, the dispute resulted from personal preferences and financial interests. In the present case, the dispute between Scott and Williams was the result of Scott's enforcement of employment policies.

Houston seeks to distinguish Woods because the assault in that case "originated in an argument concerning work [the assailant] was performing at the decedent's job site." (ECF No.

11

16, PageID 43 (quoting Woods, 967 S.W.2d at 772)). Houston argues that the assault in this case "arose because Mr. Williams was brandishing a handgun which he had brought onto the job site." (ECF No. 16, PageID 43.) However, Houston's Complaint alleges that Williams' assault resulted from Scott's enforcement of work policies. The enforcement of work-related preferences and the enforcement of work policies both concern work. Like the assault in Woods, Williams' assault arose from employment.

Scott's death arose out of and in the course and scope of employment. Workers' compensation immunity precludes Houston's tort claims against Catamount. See Tenn. Code Ann. § 50-6-108(a).

**V.  Conclusion**

For the foregoing reasons, Catamount's Motion to Dismiss is **GRANTED**.

SO ORDERED this 1st day of August, 2022.

                                                */s/ Samuel H. Mays, Jr.*
                                                SAMUEL H. MAYS, JR.
                                                UNITED STATES DISTRICT JUDGE